The action was continued nisi for advisement, and at the following March term in Suffolk, the opinion of the Court was delivered as follows, by
Parsons, C. J.
(after reciting the substance of the report of the trial, and stating the question reserved.) This cause has been very well argued on each side. The counsel for the tenant contends, that as the selectmen of Hollis were not a corporation to take in succession, and as the estate conveyed to them was for the use of Josiah Hunt, it vested in him by the statute of uses; but as the grantees took only a life estate, a life estate only vested in Hunt.
* It is therefore necessary to determine what estate [ * 198 ] the selectmen of Hollis, the immediate grantees, took under Simonds’s deed. If they took an estate for the use of Josiah Hunt and his heirs, they took only a life estate ; for it is very clear that they are not a corporation. But if they took an estate in trust for Hunt and his heirs, then the legal estate of the trustees shall be commensurate with the equitable estate of the cestui que trust, which in this case is a fee simple.
Having no court to compel the specific performance of a trust, it is a general rule to * consider estates conveyed in trust, as estates conveyed to use, if it be not repugnant to the manifest intent of the grantor. If it be, it is considered as a trust estate, and the trustee is answerable for damages, as on an implied assumpsit to the cestui que trust that he would execute the trust — a remedy certainly very inconvenient, frequently very inadequate, and resorted to from necessity, because no court is competent to compel a specific performance of the trust.
Now, what is the manifest intention of Simonds, in this conveyance to the selectmen ? They are to hold the lands for the use of Josiah *166 Hunt, but at their discretion. It could not therefore be an estate for the use of Hunt; for then the use being immediately executed, Hunt would hold the estate during his life, not subject to any control or discretion of the selectmen. Further, they are to hold for the use of Hunt, and if after his decease any estate should remain, it is to go to his heirs. Simonds therefore contemplated that the trustees were able to sell a part, if not the whole. He therefore could not mean that the legal and equitable interest in the estate should unite in Hunt.
For these reasons we are of opinion, that the selectmen, who were the immediate grantees, took the legal estate in trust for Josiah Hunt and his heirs. Whether they could lawfully convey any part of the estate under this deed by the terms of it, although it was clearly contemplated, is not now before us; as they in fact con- [ * 199 ] veyed no part of the * premises. As the estate of the grantees was in trust, it must be commensurate to the trust, and therefore was an estate in fee simple.
Josiah Hunt had then an equitable fee simple, which he might lawfully devise ; and upon his death, his widow had under his will the same equitable estate, which the judgment creditor and his assigns may lawfully claim against her. And no person can set up the legal estate against the equitable estate, but the trustees, or some persons claiming under them.
But in this case, neither the tenant nor Simonds’s heirs claim under the trustees; as to them, therefore, the equitable estate of Josiah Hunt, his devisee, and her assigns, they having the actual possession, is sufficient to maintain this action. For the actual possession is prima facie evidence of a legal seisin; and a stranger to the trust shall not be permitted to control this evidence, by proving the existence of the trust estate.
Let judgment therefore be entered on the verdict, (a)

 [If the selectmen took in their politic capacity, it would seem, that the words “ successors," in this case, might be as available, as in the case of a dean and chapter, bishop, parson, or vicar. (2 Bart. 11.) But, at any rate, it is quite clear, that if they took any thing, according to the intent of the grantor, they took in trust for Hunt, for and during his life, and for his heirs after his death. What the learned judge means, when he says, that Joseph Hunt had an equitable fee simple, is not very in telligible.—Ed.]