Shaw C. J.
afterwards drew up the opinion of the Court. The question arising upon this writ of entry is strictly a question of legal title, in which the corporation rely upon their own seisin ; and if they cannot establish such legal title, the action must fail.
The title relied upon by the demandants, is a mortgage deed, made by one James Godfrey, in May 1823, to Lemuel Perry, Jacob Shepard and Thomas Braman, then selectmen *160 and overseers of the poor of the town, (not mentioning heirs,) t0 hold to said Lemuel, Jacob and Thomas, in trust to the use of the said inhabitants, or to their successors in office, in trust for the same use forever. It is then contended that this is a conveyance to uses, and that by force of the statute of uses, 27 Hen. 8, c. 10, the estate vested in the demandants, as cestuis que use, by w'hich they became immediately seised.
Several objections have been taken to this title, as, that the conveyance is one for life, and not in fee, to the grantees named ; — that the conveyance is a bargain and sale, which itself only creates a use, and that a use cannot be limited on a use. To these objections several answers are made, which we do not deem it material to consider, as we think there is another view of this title which is decisive of the present case.
That a conveyance by feoffment or devise to one, in fee, in tail, or for life, to the use of or in trust for another, will operate by force of the statute, to transfer the seisin in fee, or of an estate as large as that made to the grantee or devisee to uses, there is no 'doubt, where it is manifest from the whole tenor of the conveyance that such was the intent of the parties
But it is not every conveyance in trust[1] which is executec. by the statute. Where it manifestly appears that the trustees are to be active and exercise any control over the estate, so as to show that it was not intended that the estate should vest in the cestui que use, the law holds that it is a trust and not a use executed.
So where something remains to be done by the trustees, which renders it necessary for them to have the legal estate, such as payment of the rents and profits to another’s separate use, to pay debts or the like, the grantee or devisee has only a trust estate. 2 Wms’s Saund. 11, note 17.
So where there was a devise to trustees to receive the rents and profits, and appropriate them to the subsistence and maintenance of a particular person, it was held to be a trust and not a use executed by the statute. Silvester v. Wilson, 2 T. R. 444.
But there is a stronger case to show that the general intent and purpose of the conveyance will be regarded, rather than the particular terms of it, in order to determine whether a *161 particular grant is a use executed by the statute, or a trust, and that it will be construed to be the one or the other as either shall be best adapted to carry into effect the intent of the parties. Whether this be a use executed in the trustees or not, says Lord Kenyon, must depend upon the intention of the devisor. Harton v. Harton, 7 T. R. 652.
The same doctrine was held by this Court, in a case where the opinion was delivered by Chief Justice Parsons. Having no court to compel a specific performance of a trust, says he, (this was in 1810,) it is a general rule, to consider estates conveyed in trust as estates conveyed to use, if it be not repugnant to the manifest intent of the grantor. If it be, it is considered as a trust estate. Newhall v. Wheeler, 7 Mass. R. 189.
That where it becomes necessary to ascertain the intent of the parties to a conveyance, such intent may be inferred and determined from the nature and purposes of the conveyance, as well as from the force and technical effect of the particular form of words, by which it is made, has often been decided n this Court.
Under a statute of this commonwealth, (Stat. 1785, c. 62, § 4,) it is provided that all conveyances to two or more, shall be he d to carry estates in common, unless it appear to have been the intent, that joint estates should be created.
In Appleton v. Boyd, 7 Mass. R. 131, it was determined, that, upon a conveyance in mortgage to two, to secure a joint debt, inasmuch as upon the death of one the legal right to the debt would survive, and it would but comport with the remedy given by the mortgage, that the interest in the mortgaged premises should also survive, it was adjudged upon this ground that it was the intent of the parties to create a joint tenancy and not a tenancy in common.
In Goodwin v. Richardson, 11 Mass. R. 469, the same principle was adopted, and the reasons and grounds of the decision were fully illustrated and explained.
And in the case of Newhall v. Wheeler, already cited, which was a case extremely like the present, being a conveyance to three persons, selectmen of the town of Hollis in New Hampshire, for che use, benefit and behoof of one Hunt, it *162 was held that the conveyance was a trust and not a use executed, because such construction would best comport with the general purposes of the conveyance, and carry into effect the intent of the parties.
The conveyance in question, being a mortgage, its purpose and intent must be determined by a reference to the personal obligation, to secure the performance of which it was given. A mortgage, though it is in form an actual conveyance of the title to real estate, and, as between the mortgagor and mortgagee, and for all purposes of remedy, is considered as vesting the estate, yet as between other persons and to most purposes, before breach of the condition, is regarded as a pledge, which follows the nature of the debt. So in the cases already cited, where the debt was joint, the mortgage collateral to it was held to be a joint tenancy. The principle to be deduced from these cases is, that the nature and quality of the estate will be determined by the intent, that the intent will be inferred from the purposes of the conveyance, and that where the conveyance is a mortgage to secure a personal undertaking, it shall be taken that the parties intended to create such an estate as is best adapted to give effect to the deed as such collateral security. Tried by this test, it is very clear that the deed itself, if it passed any interest, conveyed a trust estate to the mortgagees, and not a use vested by the statute.
The direct and immediate object of the deed, was to secure the performance of the bond. It is manifest that in point of law, the bond to Perry, Shepard and Braman, and their successors, created a legal obligation to them personally and individually, and it could only be enforced by them. They were not a corporation, and the limitation to their successors was void. No statute provision, and no rule of common law, vested in the town any legal interest in this bond, or any right to enforce it. If available at all, it was a contract with the individuals named, in trust for the town. If then the deed of mortgage could be construed as a conveyance to the use of the town technically, and the estate be considered as executed by force of the statute, the consequence would be, that the legal interest in the bond and the right to enforce it, would be in one person, and the legal interest in the pledge and the right *163 to resort to it as a remedy, would be in another ; a consequence which the law will not intend, when the terms of the deed are open to construction.
This view of the case is entirely decisive of the present action, in the name of the town. But there is another ground, less technical and more directly affecting the merits, which we think equally decisive, and which goes directly to the validity of this bond and mortgage.
The bond to which this mortgage stands as collateral se curity, is a direct bond of indemnity, conditioned to indemnify the town against their liability to contribute to the support of the obligor himself, or his family, under the general provisions of law providing for the relief of the poor. Whether such a bond secured by mortgage, can under any circumstances be a valid obligation, or whether it is to be regarded as a voluntary conveyance, good as between the parties, but void against purchasers and creditors, or either, are very important ques tions, upon which it is not now necessary to decide. It would certainly be attended with extraordinary consequences, if every holder of real estate in a town should be called upon to give such a security, and perhaps subjected to the displeasure of his townsmen, if not other ill consequences, were he to refuse to give it; or if any townsman, happening to be embarrassed in his affairs, by misfortune or otherwise, should be called upon amidst the pressure of other urgent claims, thus to give security, and this perhaps under a menace of being proceeded against as a spendthrift and placed under guardianship on refusal. If such a modification of the system of laws providing for the relief of the poor and for the indemnity of towns, is to be considered wise and desirable, it would be proper that it should be provided for by law under suitable regulations, adapted to the general interests of towns. I desire however to consider these questions as still open, to be decided on as they arise. But without deciding upon this general ground, the Court are all of opinion, that the present security was obtained under such circumstances, that it is invalid and void.
It appears by the report, that before this security was given, the selectmen had filed a complaint with the judge of probate, against Godfrey, as a spendthrift, that these proceedings were *164 continued from time to time at his request, and that the selectmen were induced to relinquish these proceedings, solely in consequence of his consenting to give the above bond and mortgage.
It becomes necessary .to refer to the statute, to determine what are the nature of these proceedings, and the purposes intended to be accomplished by it. St. 1783, c. 38, § 7.[1]
The general object of the statute is to provide for the ap pointment of guardians to minors and others. The section in question has a preamble to this effect: “And whereas, to the dishonor of human nature and the great injury of society, individuals oftentimes spend, lessen and waste their estates, by excessive drinking, gaming, idleness and debauchery, and thereby involve themselves and families in distress, misery and ruin, and subject the towns to which they belong to expense and charge for their maintenance and support; ” and it provides, that in such case, the selectmen or the major part of them, shall lodge a complaint with the judge of probate, who is to give notice to the party, and if it appears to him, upon a judicial inquiry, that the person comes within the description of the act, he shall appoint the selectmen, or some suitable and discreet person or persons, guardian or guardians of such person.
It is manifest from this abstract of the statute, that it is founded in considerations of great public policy. The power given by the statute, to institute these proceedings, itself a most extensive and extraordinary one, and one which may in its consequences, take away the whole power of any person over the whole of his real and personal property, and place him in a state of pupilage, is vested exclusively in the selectmen for the time being. The judge of probate cannot either proprio vigore, or upon the application of heirs, children or friends, institute these proceedings, or obtain the appointment of a guardian. The authority is given to selectmen, not as agents of towns, but as high public officers, selected for their prudence and discretion. This high authority is to be exer cised with a view to all the purposes contemplated by the statute. And these purposes are sufficiently designated ; and though the saving of the town from expense in the support of *165 Mich person, is one of those objects, it is only one of several, and perhaps may be deemed a subordinate one. The statute not only contemplates persons may come to poverty, but looks to their coming to poverty by means of vicious and criminal excess, by which they are in danger of involving themselves and their families in distress, misery and ruin. The high power intrusted to these public officers, in a case properly requiring its exercise, is therefore to restrain the party from a course of vicious excesses, to reclaim him from habits of excessive drinking, gaming, idleness and debauchery, by taking from him the power and the means of indulging in them, and thus saving both himself and his family from distress, misery and ruin, as well as to save the town from danger of expense. And we think that selectmen would greatly mistake and fail in their duty, if they were to execute the authority confided to them by this statute, with a sole and single regard to the interest of the towns, by whom they are appointed. For, though appointed by towns, yet in this as in many other cases, they exercise statute powers, as public officers, and not merely as town agents.
Such being the provisions and the policy of this statute, when it appears by the result that the selectmen had lodged a complaint with the judge of probate, with a view to the appointment of a guardian over Godfrey as a spendthrifi, it follows of course, that they must have stated that he was wasting his property by vicious excesses, as described in the statute, and they were proceeding upon this complaint, when this security by bond and mortgage was obtained. And they relinquished these proceedings, not because the grounds of complaint were proved to be unfounded, but because the particular interest of the town was provided for, by this security. If the complaint was well founded, and the facts set forth in it were true, then the relinquishment of the proceedings as a consideration for a particular security to the town, was an abandonment of a public duty imposed on them by law ; if the complaint was not well founded, but was persisted in and only relinquished as a consideration for giving this security, it was using a public power, given for other purposes, to compel the giving of a particular security ; in either case, the relinquish *166 ment of these proceedings, as a consideration for the execution of this bond and mortgage, was turpis causa, and renders the bond illegal and void. If a party, against whom such a complaint is made, can induce those officers, who alone are by law invested with the power to institute and prosecute such a complaint to its legitimate result, in the appointment of a guardian, to give up and relinquish such proceedings, simply by providing for the indemnity of their town, he may thus, by an application of a part of that property which he is wasting by vicious in dulgences, purchase an exemption from the force of this salu tary law; he may be left to that course of criminal habits, and himself and family be involved in that condition of distress, misery and ruin, from which it was the purpose of this law to rescue and secure them.

Plaintiffs nonsuit

 See Rev. Stat. c. 79, § 11,12,13.