Parker C. J.
delivered the opinion of the Court. The first objection to the action is, that the demandants are not entitled to sue as guardians, the letter of guardianship being to them with five others, selectmen of the town of Nantucket, the term of whose office has expired, and the demandants not being selectmen, at the time the writ was sued out.
The statute authorizes the judge of probate to take care of the estates of spendthrifts, by appointing the selectmen or any other suitable persons as guardians over them ; and the persons appointed are to give bonds, &c.
We think it very clear, that the legislature did not intend that the selectmen, in their municipal character, should be guardians ; that every thing done respecting the estate should be done by the board sitting in its municipal form ; that the *153 trust of guardian should be annual, so that new appointments should be necessary every year ; or that it should go by sue-cession, with the office of selectmen. In giving the power to appoint the selectmen, the legislature seem only to have considered the persons holding that office as enjoying the confidence of the town, whose interests were to be taken care of by the guardians ; a principal object being to prevent the estate from being wasted, lest the spendthrift might become charge able to the town. The judge of probate is to appoint “the selectmen or some other suitable persons ” ; evidently recommending the selectmen as suitable persons, and directing the attention of the judge of probate to them as such, but not intending to vest them with the trust as a corporation or municipal body ; otherwise their personal bonds would not have been required, and it would have been expressly enacted, that the selectmen and their successors in office should be the guardians.
The case of Newhall v. Wheeler, 7 Mass. R. 189, is somewhat similiar. In that case, there was a conveyance to three persons, selectmen of the town of Hollis, and their successors in the trust of selectmen for the time being, for the use, &c. of one Hunt during his life, with a remainder to his heirs forever. It was held, that the three persons, to whom the conveyance was made, took the estate personally in trust, notwithstanding it was conveyed to them as selectmen.
The letter of guardianship is certainly far from being an accurate execution of the power of the judge of probate, under the statute; but its defects are not substantial. It is directed to the selectmen of Nantucket, without naming them ; but in the close of the instrument, the names of the persons holding that office are mentioned. The bond is taken from them in their private capacities, and binds their heirs, executors and administrators; but there are no sureties. This, however, does not make the guardianship void ; for the giving bond with surety is not a condition precedent to the executing of the authority of guardian, it being in the power of the judge of probate to remove guardians, if they fail to give security from time to time as he shall direct. St. 1783, c. 38 ; St. 1816, c. 94, § 3.
*154 We think then, that the demandants are rightly in court as guardians, they having been lawfully appointed with others, and the trust having devolved upon them.
The next objection is, that the deed of release, under which the demandants claim, was not sufficiently proved, one of the subscribing witnesses, whose deposition is in the case, not recollecting the fact of execution, though verifying his attestation or rather his signature as a witness, and the other not being called.
It is so very common a case, for attesting witnesses, who frequently are present but for a moment and do nothing but write their names, to take no notice of or to forget the instrument which they attest, that if it were required that they should recollect the facts and circumstances, few estates would bear a scrutiny. It has been the invariable practice in such cases, for the instrument to go to the jury with such testimony as was given in this case, not as conclusive, but as presumptive proof of the execution.
And one of the subscribing witnesses is sufficient, the othei not being within the process of the court; unless there is some reason to believe or suspect that the instrument has been forged.
In Norris v. Freeman, 3 Wils. 38, a new trial was granted, because one of the subscribing witnesses, who it seems was within reach, was not called. But this evidently was considered in a discretionary light by the court, and not as strictly a matter of law ; on the contrary, the case would seem to prove, that in ordinary cases the testimony of one of the subscribing witnesses was sufficient. In the case then before the court, the defendant in the action set up a release ; Uiere were strong grounds of suspicion that the "release was forced ; and there were witnesses, who swore that the signature waik.not, in their opinion, the plaintiff’s. The judge who tried the addon stated, that in his opinion the evidence was in favor of the plaintiff, Under these circumstances the court granted a new trial, because one of the subscribing witnesses was not called, in order that there might be a more satisfactory trial of the genuineness of the release. One witness swore, that he heard the defendant say he would let judgment go against him by default, and *155 that he did not pretend he had any release. It also appeared that the declaration was of Trinity term 1768, and that the release was not pleaded until Trinity term in the next year. These were strong grounds of suspicion ; and it was on this account that a new trial was granted, in order that the other subscribing witness might be examined.
The case of Hodnett v. Forman, 1 Stark. R. 90, is in point. The bond sued purported to have been executed in Ireland, and to have been attested by two subscribing witnesses. The plaintiff called one of the witnesses, and proposed to prove the handwriting of the other witness, who was then in Ireland, and no application had been made to him to attend ; but on the authority of Prince v. Blackburn, 2 East, 250, Lord Ellenborough admitted the evidence.
In the case of Prince v. Blackburn, one of the subscribing witnesses was dead, and the other was in a foreign country. The defendant pleaded non est factum. The instrument was allowed to be read in evidence, upon proving the handwriting only, of both the witnesses.
In the case at bar, the absent witness was out of the Commonwealth, and the signature was proved to be his handwriting by the other witness.[1]
But the more important question relates to the legal effect and operation of the deed of William Coffin to Russell, which is objected to, on the ground of its being a naked release, and therefore as not passing the estate, the releasee not being in possession at the time of its execution.
The general doctrine, on which this objection rests, that a mere release of a right to one not seised or in possession of the estate passes nothing as a release, cannot be contested. But this doctrine has been considerably qualified, even in ancient times, by a meritorious desire in courts of justice to give force to the intention of parties, although, by a strict technical construction of the form of conveyance adopted, that intention would be frustrated. The broad and liberal principle, that deeds and other instruments shall be so construed and applied as to pass an estate, when such was the intention, is laid down *156 in Shep. Touch. 82, 83. It is recognised in the modern dgests, particularly in Cruise.
And it was fully sanctioned by this Court in the case of Pray v. Pierce, 7 Mass. R. 381. The counsel for the tenant admits, that that case, if law, must govern this ; but he denies its authority, and contends that it is not supported by the cases cited by the Court in the opinion; which was delivered by Parsons C. J., although it does not appear under his name.
It is very true that the cases cited differ in one respect from the case decided, namely, ■ that in the conveyances referred to, in addition to the words of release, there was the word grant. But the principle of the cases is the same. That principle is, that where it is apparent that there was an intention in the grantor to convey, and in the grantee to take, al though the instrument is not calculated technically to execute that intent, it should be made to operate in some other way, to effect the purpose.
Now we apprehend that the term grant, which appears in the English cases cited, has no effect in producing this result. A grant, by itself, does not technically pass the estate ; it conveys only an incorporeal right, and when used in instruments intended to operate as releases, it makes the instrument no more than a release. So that when a deed of lease and release, having the term grant in it, is made to operate as a covenant to stand seised to the use of the releasee, as in the case cited in Pray v. Pierce, it is only by force of the general principle of giving effect to the intention of the parties, in a way different from the technical operation of the instrument, that it is held so to operate.
Willes C. J., in Roe v. Tranmer, 2 Wils. 78, observes, “that the judges have been astuti to carry the intent of the parties into execution, and to give the most liberal and benign construction to deeds, mí res magis valeat, &c.” “ By the word intent is not meant the intent of the parties to pass the land by this or that particular kind of deed, or by any particular form or mode of conveyance ; but an inter' that the land shall pass at all events one way or other.”
Lord Hobart, in his Reports, p. 277, says, u I exceedingly commend the judges, that are curious and almost subtile astuti *157 to invent reasons and means to make acts according to the just intent of the parties, and to avoid wrong and injury, which by rigid rules might be wrought out of the act.” And this deduration is cited and approved by Lord Hale, in Crossing v. Scudamore, 1 Ventr. 141.
Now, in the case before us, what are the elements of the contract between William Coffin, the releasor, and Russell, the releasee ? The former had the title and the seisin of the estate under a deed from Winslow; he had the possession, not actual but legal, Winslow being in as his tenant by lease ; he received from Russell a full, valuable consideration for the land, so acknowledged in the deed; he covenants against all claiming under him and his heirs ; and he releases all his right, &c. Now this deed cannot operate as a release, from the technical objection, that Russell was not then in possession. But shall the deed have no effect ? Was it not the real intention that William Coffin should sell and that Russell should purchase ? It would be going back to the dark ages, to say that it shall have no effect; when between the parties it was supposed to be as good and effectual to pass the estate, as a deed of bargain and sale should be.
We all know it to be very common for grantors, when selling and having a right to sell, to be desirous of protecting themselves against future claims, especially if there is any cloud on the title, though they are lawfully seised ; and the most common, though not the best way of doing this, is to give a quitclaim deed instead of a deed of bargain and sale.
A large, if not the greater portion of titles in the country, are of this sort. Now if the releasor is seised, so as not to sell a pretended title, there can be no reason why his deed of quitclaim should not pass the estate. If he is not seised and the releasee is not in possession, then nothing passes by the deed ; though it may then operate as an estoppel against the releasor.
We think it immaterial, whether this deed is to operate as a gift, a bargain and sale, or a covenant to stand seised; it is sufficient that it passed the estate. The case cannot he distinguished from Pray v. Pierce, and we have no disposition to *158 overrule that case, believing that it was deliberately settled, anc^ t^at ^ rests uPon sound principle and sufficient authority.
(C ^ jee(j t^at js ¡ntenc[ec| and ma(je to one purpose, may enure to another ; for if it will not take effect in the way it is intended, it may take effect another way. And therefore a deed, made and intended for a release, may amount to a grant of a reversion, an attornment, or a surrender, or e con-verso. And if a man have two ways to pass lands by the common law, and he intended to pass them one way and they will not pass that way, in this case, ut res valeat, they may pass the other way.” Shep. Touch. 82.[1]
In regard to .the objection, that the tenant was not allowed to give evidence of the general character of Hedge, one of the witnesses, we think it cannot prevail. Hedge was a subscribing witness to the deed from Winslow to William Coffin, but was not examined by the demandants, from an apprehension that his testimony would be adverse. He was then introduced by the tenant, and was cross-examined by the demandants, who afterwards read Hedge’s deposition, to contradict his testimony on the stand. There was nothing irregular in this course ; nor was there a right to go into evidence of his general character, notwithstanding the attempt to impeach him by contrasting his testimony given at a different time.
The position, as laid down by Starkie, cannot be carried to the extent contended for. He probably meant only, that where the questions put in the cross-examination and the answers did impeach his general character, the other party might rebut by proving a good general character. And so far we do not object to the principle. As in the case stated by Starkie, the witness was asked, whether she had not been twice committed to Bridewell, and answered that she had. This went to affect her general reputation ; and the party who called her, was allowed to prove, that since those commitments her character had been fair and good.
But it never was decided, that if a witness was contradicted as to any fact of his testimony, either by his own declarations *159 at other times, or by other witnesses, evidence might be admitted to prove his general good character. If this were the practice, great delay and confusion would arise, and as almost all cases are tried upon controverted testimony, each witness must. bring his compurgators to support him when he is contradicted ; and indeed it would be a trial of the witnesses and not of the action.
None of the objections prevailing, the judgment must be upon the verdict.

 See Whittemore v. Brooks, 1 Greenleaf, 61, note; 1 Stark. Evid. (5th Am. ed.) 327, 329 and notes.

 See Somes v. Skinner, 3 Pick. (2d ed.) 58, note 1; Reformed Dutch Church v. Veeder, 4 Wendell, 496; Croade v. Ingraham, 13 Pick. 549; Dart v. Dart 7 Connect. R. 250; Revised Stat, c. 59, § 5.