ADAM HUBBARD *vs.* JOSEPH S. RAWSON.

By a devise of land in trust to the separate use of a married woman, her heirs and assigns to be managed and invested under her direction, and the income, or, if she require it, the principal, to be paid to her; and upon the death of her husband, the whole property to be conveyed to her in fee simple; and upon her death, to be conveyed to such persons as she may appoint, or, on failure of such appointment, to her children; the children, on the death of their mother, without having made such appointment, take as purchasers under the will, and not by descent from her.

ACTION OF TORT for breaking and entering a close in Webster, part of the land devised by the following residuary clause in the will of Daniel Rawson, which was made in 1841, and proved in 1843 :

" I give and bequeath all the rest and residue of my property and estate, real, personal and mixed, including my homestead in said Webster, with the stock thereon, to Charles Yeomans, of said Webster, his heirs, executors and administrators, in trust for the sole, separate and exclusive use of my said daughter, Lucy Morris, wife of Godfrey Morris, her heirs and assigns forever, the same to be at her only, sole and separate disposition ; the said trust fund not to be interfered with by her husband, or liable for his debts ; and upon the further trust that he hold and manage said property under the direction of said Lucy during her coverture ; and that he sell, exchange, invest and reinvest said property or any part thereof as she may order and direct, paying over to her the income, and, if required, the principal thereof, upon her sole separate order and receipt, her marriage or coverture with said Godfrey notwithstanding; and upon further trust that, in case she may survive the said Godfrey, he assign and convey the same to her, to hold the real estate in fee simple, and the

personal property forever, to her own use ; and that if said Lucy should make any disposition by will or other writing of said property, which she is at liberty to do, he pay, convey and deliver over said trust property to such person or persons as she may name ; and if she does not make any such disposition, that he pay, convey and deliver over said trust fund, or what may remain in his hands, to her children, to be equally divided between them, meaning hereby that he shall pay and distribute what may remain of said fund at her decease, in case she make no will, in the same way and manner the same would have been distributed had she died intestate, sole and unmarried, to her children, if she leave any, and if not, to such as would inherit when the intestate leaves no children."

Charles Yeoman, named in the will as trustee, declined the trust, and Erastus Spaulding was duly appointed his successor. During the lifetime of Lucy Morris, said real estate was in her occupation and control. On the 23d of January 1850, she died intestate, leaving her husband and two children, Lydia Morris and Augustus Morris, both then minors. Lydia Morris afterwards became of age, and married John Davis, and, on their petition, partition was made in the probate court between her and Augustus, and the estate described in the writ was set off to Augustus. Augustus died on the 1st of August 1850, under age and unmarried. On the 29th of May 1854, Erastus Spaulding, the trustee aforesaid, not having previously made any conveyance of the real estate so devised, conveyed the same to Lydia Morris ; and she and her husband gave a quitclaim deed thereof to the plaintiff, who entered on the premises and brought this action for a subsequent trespass by the defendant. The defendant justified his entry and alleged trespass under a license from Godfrey Morris, the husband of Lucy Morris, who claimed the estate by descent from his deceased son Augustus.

The parties submitted the case to the decision of the court upon the facts above stated, with an agreement that if the plaintiff was entitled to recover, judgment should be rendered for him for nominal damages ; otherwise, judgment for the defendant.

*D. Foster*, for the plaintiff. The estate which Lucy Morris took, under the will of her father, was an equitable estate in fee simple, which, on her death, descended to her children; and on the death of her son, his estate descended, by virtue of Rev. Sts. *c.* 61, § 1, *cl.* 6, to his sister, whose title the plaintiff holds. It is immaterial whether the plaintiff's estate be legal or equitable, for in either case, on his construction of the will, he has a valid possessory title.

The clear intent of the testator was to bestow upon his daughter, being a married woman, an absolute and unlimited control over the property, both real and personal, free from the interference of her husband. This he could only do by creating a trust estate; for the will was made before the *St.* of 1845, *c.* 208, authorizing married women to hold separate property without the intervention of a trustee. The trust was, however, limited to the fulfilment of this object. The trustee was to manage the property, under the direction of Mrs. Morris, and to pay over the income, and, if required, the principal, at any time; and, on the death of her husband, the trust was to terminate, and the legal estate be at once conveyed to her. The estate was in terms given to Mrs. Morris "her heirs and assigns," by the apt and technical words which create a fee simple; and there is no subsequent language to restrain the effect of these words, and cut down the fee into a life estate. The devise over to her children is only of "what may remain"; and, if it had been to a stranger, would have been void, because inconsistent with the previous unlimited power of disposition in the first taker. *Ide* v. *Ide*, 5 Mass. 504. *Newhall* v. *Wheeler*, 7 Mass. 189. *Burbank* v. *Whitney*, 24 Pick. 155. *Ramsdell* v. *Ramsdell*, 21 Maine, 293.

The provision of the Rev. Sts. *c.* 59, § 9, abolishing the rule in Shelley's case, does not affect the interpretation of this will; for it does not create life estates with remainders, where the testator designed to create estates in fee; but only puts an end to the practice of construing as estates in fee what the testator designed to be estates for life with subsequent remainders. *Richardson* v. *Wheatland*, 7 Met. 172. And this consideration seems to be conclusive of the case; for it cannot alter the construction

of the will, that the persons to whom the remainder is given happen to be the very ones who also take by descent.

But it is unnecessary to regard the devise over as invalid. The more reasonable explanation is that the testator created the trust estate, simply to protect the property from the husband, and that, when this object had been fulfilled, the trust should termi- nate, and the legal estate be conveyed by the trustee to those who had inherited the equitable estate.

*P. C. Bacon*, for the defendant.

DEWEY, J. The decision of this case depends upon the con- struction to be given to the will of Daniel Rawson, and particu- larly to that clause containing a devise for the benefit of his daughter Lucy Morris. If the premises in controversy were so held and possessed by Mrs. Morris that, upon her death, they descended by force of the Rev. Sts. *c.* 61, § 1, as her intestate estate, to her two children, then, upon the decease of her son Augustus Morris, his share passed to his sister, who survived him. On the other hand, if the two children of Mrs. Morris took their estate directly under the devise of Daniel Rawson, and are to be deemed to hold the same by force of that title, and not as heirs of an intestate estate of their mother, then, upon the death of Augustus Morris, without issue, his inter- est passed to his father, Godfrey Morris, under the statute of descents.

The plaintiff insists that, under the clause in the will that has been referred to, Mrs. Morris took an equitable fee simple, which upon her death descended to her children as heirs of her intes- tate estate. To establish this position, he relies upon the terms of the devise, as showing the intention of the testator to confer upon Mrs. Morris an absolute and unlimited control over the estate, through a trustee appointed to carry out this object.

No doubt the testator had the general purpose to give the property in trust in the best way to secure the same wholly for the use of his daughter. But embarrassment arose from her being a married woman, and from the wish of the testator to secure it to her sole use, and to prevent her husband's acquiring any right to it by the devise to her. To effect these objects,

21 *

the testator resorted to the mode of devising it to a trustee, giving the use of the estate to Mrs. Morris during her life, and the power to direct a sale thereof by the trustee, or by her will or other writing to declare in whom the estate should vest on her death ; but with the further provision, that, in case no such power had been exercised, or any disposition made of the estate during the life of Mrs. Morris, by her, then the trustee should convey and deliver over the trust fund to her children, to be equally divided between them.

Mrs. Morris died without having exercised the powers thus conferred upon her, leaving two children ; and the question arises upon the gift over, and whether any estate passed thereby to the children, so that they may be said to hold under the devise of their grandfather, Daniel Rawson, as purchasers. Was the estate of Mrs. Morris an equitable fee simple, absolute in its character ?

It is said that the estate was, in terms, given in trust for the use of Lucy Morris, her heirs and assigns, thus indicating an absolute fee simple. This is so ; but the entire provisions, and all the limitations found in this clause of the will, qualifying the first sentence, are to have their proper effect in giving a construction to this devise. Although thus given for the use of Lucy Morris, her heirs and assigns, yet, in a trust estate, where the conveyance of the legal estate is to a trustee for certain declared trusts, upon certain limitations and conditions therein stated, and especially if there be a gift over to other persons upon the happening of certain events, a fee simple absolute does not pass to the first taker. The policy of our law obviously is to carry out the intention of the testator so far as it can be found effectively declared in the will.

In the present case, it is quite obvious that the testator did not intend that the legal estate should ever vest in Mrs. Morris during her coverture. It was in no event to be conveyed to her, except upon her surviving her husband. By will, or other writing, she might appoint the person to whom the estate was to be conveyed ; but the testator proceeds to make a disposition of the farm upon the contingency of Mrs. Morris not making any will disposing of the same, and assumes to direct the same, in such

an event, to be conveyed to the children of Mrs. Morris, upon her decease before her husband. This provision of the will seems to negative the idea that the estate was wholly in Mrs. Morris at the time of her decease, which is the proposition to be maintained by the plaintiff. If this devise over to the chil dren is of any validity, then by force thereof the children of Mrs. Morris took the estate as purchasers under the will of their grandfather, Daniel Rawson, and not as heirs at law of their mother, and under the statute of distributions of intestate estates.

In the view we take of the case, this part of the devise cannot be treated as a nullity. The cases, cited by the plaintiff, of *Ide* v. *Ide*, 5 Mass. 504, and *Newhall* v. *Wheeler*, 7 Mass. 189, are not parallel cases, and the same reasons do not exist here, as existed in those cases, for holding the conveyance to be that of an absolute title.

Here was a gift over of the residue of the testator's estate that might exist upon the failure of Mrs. Morris to do certain acts, and in the event of her decease before her husband. The devise was to the children of Mrs. Morris, the word " children " being used as *descriptio personarum*, to identify those who were to take the estate devised. This devise over is inconsistent with the idea that the testator intended to devise an absolute estate to Mrs. Morris, so that, in the event of her death, it would descend to her children or heirs at law as her intestate estate. The tes tator having, by the terms of his devise, made the children of Mrs. Morris his devisees, to take the estate upon a certain con tingency, and that contingency having occurred, they must be held to have taken the estate as purchasers under the will.

The result to which we come is, that Mrs. Morris had only an equitable fee simple contingent, liable to be defeated upon her dying before her husband, in case the estate was not conveyed by her order, and she had made no disposition of the property by will or other writing; that it was competent for the testator to make the devise over; and that, the estate given to Mrs. Mor ris having terminated by her death, her children held the land as purchasers by force and effect of the will of Daniel Rawson, and

not as an estate acquired by inheritance from their mother. Such being the case, upon the death of Augustus Morris, his father was, by our statute of distributions, entitled to hold the estate of Augustus, as his heir at law. The result is that Godfrey Morris is jointly interested in the estate as tenant in common of one undivided half thereof; and the defendant, claiming under his title, has maintained his defence.

*Judgment for the defendant.*