## Caleb W. Loring *vs.* Ephraim L. Eliot & others.

A marriage settlement of real and personal property, executed before the Revised Statutes, recited that the settler " is desirous of securing the said estate, both real and personal, in the event of her marriage, to her sole use and benefit; and for this purpose it hath been agreed that all the estate and property aforesaid shall be granted, assigned and transferred unto J. S., to be held in trust by him for the separate and sole use and benefit of " the settler, " and her heirs, (notwithstanding any such coverture,) upon the terms and conditions, for the uses, intents and purposes, under the limitations, and for and during the time, as hereinafter is expressed; " and conveyed the property to the trustee in trust " to the sole use and behoof of " the settler " and her heirs until the solemnization of any such marriage, and from and immediately afterwards " to be held during her life " to the sole use and separate benefit " of the settler, " without being liable to the debts, incumbrances or control of any husband she may have during the existence and continuance of said trust," to pay the income, as well as such portion of the principal as the trustee should judge necessary for her convenience and support, to the settler or to such person as she without the signature or interference of any husband should appoint, " for and during the natural life " of the settler, " that is to say, for and during the term for which said trust shall continue," and after her decease to pay the unpaid income and transfer the remaining property to her children, if she should leave any, and, in case she should die without issue, then to transfer the same in like manner unto her heirs at law. Among the covenants of the trustee with the settler was one that upon her death he would transfer the property to her child or children if she should leave any; but there was no covenant with respect to her heirs at law. *Held,* that the settler, from the time of her marriage, took an equitable estate for life with a contingent remainder to her children if she should leave any; and with a reversion to herself, in case of her death without issue, which she could lawfully dispose of by will.

Bill in equity for the instructions of the court, filed by the trustee under a marriage settlement executed on the 30th of September 1817 between Elizabeth Fleet Eliot and her father, Ephraim Eliot, which recited that she was seised and possessed in her own right of certain real estate therein described, and was also possessed of certain personal property, stocks, notes, and bond. " And whereas she, the said Elizabeth Fleet Eliot, is desirous of securing the said estate, both real and personal, in the event of her marriage, to her sole use and benefit; and for this purpose it hath been agreed that all the estate and property aforesaid shall be granted, assigned and transferred unto the said Ephraim Eliot, and to such other trustee as shall hereafter be appointed according to the provisions hereinafter expressed, to be held in trust by them for the separate and sole use and benefit of her, the said Elizabeth, and her heirs, (not-

withstanding any such coverture,) upon the terms and conditions, for the uses, intents and purposes, under the limitations, and for and during the time, as hereinafter is expressed.

" Now this indenture witnesseth, that the said Elizabeth Fleet Eliot, in consideration of the premises, and of the covenants hereinafter contained, and also of one dollar now paid to her by the said Ephraim Eliot, the receipt whereof is hereby acknowledged, hath granted, bargained, sold and transferred, and by these presents doth grant, bargain, sell and transfer, unto the said Ephraim Eliot, his heirs and assigns forever, all the real and personal estate, stocks, notes and bond, hereinbefore described and specified:

" To have and to hold the same to him, the said Ephraim Eliot, his heirs and assigns forever, to and for the several uses, trusts and purposes, and subject to the several provisions, limitations, powers and agreements, hereinafter limited, declared and expressed; that is to say, to the sole use and behoof of the said Elizabeth and her heirs until the solemnization of any such marriage, and from and immediately afterwards to and for the following uses, intents and purposes, to wit, that the said estate, both real and personal, stocks, notes and bond, shall be held, during the natural life of the said Elizabeth, by him, the said Ephraim, and by such other trustee as shall be appointed for that purpose in the manner hereinafter expressed and provided, to the sole use and separate benefit of her, the said Elizabeth, without being liable to the debts, incumbrances or control, of any husband she may have during the existence and continuance of said trust; that said Ephraim shall, from time to time, lease and demise said real estate to the best profit and advantage ; and, at such time as he shall see fit and think proper, sell and dispose of all or any part of said real estate, upon the most advantageous terms for the interest of said Elizabeth, and shall invest the proceeds thereof in the safest and most productive funds ; and, upon payment of the capital stocks, notes or bond aforesaid, invest the same in like manner; that he shall pay all the rents and profits of said real estate while unsold, and the clear interest and income of said funds, and

also the clear interest and income of said personal property hereby assigned, and all the net profits arising and accruing therefrom, as well as such portion of the principal as he shall judge necessary for her convenience and support, unto her, the said Elizabeth Fleet Eliot, or to such person or persons as she shall in writing, without the signature or interference of any husband, appoint, for and during the natural life of her, the said Elizabeth Fleet Eliot, that is to say, for and during the term for which said Ephraim's trust shall continue, according to the provisions and limitations hereinafter expressed; and, after the decease of the said Elizabeth, the remaining income and profit unpaid, to the child or children of the said Elizabeth, if she shall leave any ; and, upon such decease, grant, convey and transfer the same estate, both real and personal, and any investments in funds, unto such child or children, his and their heirs and assigns, forever; and also grant and convey, in like manner, any real estate which may be purchased with the proceeds of said property : and, in case the said Elizabeth should die without issue, then to grant, convey, and transfer the same, in like manner, unto the heirs at law of her, the said Elizabeth Fleet Eliot."

Said Ephraim covenanted with said Elizabeth that in case she should desire any real estate to be purchased with any part of said capital, and he should think it advantageous and proper, he would purchase and hold the same upon the same trusts and limitations as were therein contained, and pay over the rents and income as above provided, unless she should choose to occupy and live on the same; and that, in case of his mental infirmity or any other incapacity or death, he or his heirs, executors and administrators should convey the trust property to a trustee appointed by the judge of probate. The only other covenant was that " the said Ephraim doth also further covenant as aforesaid, that upon the death of the said Eliz-abeth, if he shall then be her trustee under the provisions of this indenture, he will grant, transfer and assign all and singular the estate and property which he may then hold under the grant and trusts aforesaid unto the child or children of the said Eliz-abeth, if she leave any."

The bill alleged that Ephraim Eliot became duly seised and possessed of the real and personal estate described in the settlement, and continued to hold the same in trust until his death; that on the 10th of December 1849 the plaintiff was duly appointed trustee under the settlement, and so continued until the death of Elizabeth in September 1858, at which time the plaintiff was seised and possessed of certain real and personal estate as trustee as aforesaid; that Elizabeth (who was then the widow of Charles T. Hildreth) died without issue, and by her will devised and bequeathed all her estates to persons other than her heirs at law; and that her executor and devisees, as well as her heirs at law, all of whom were made parties to the bill, claimed the property held by the plaintiff.

*C. B. Goodrich & W. Minot, Jr.,* for the heirs at law, besides some of the cases cited in the opinion, referred to *Richardson* v. *Wheatland,* 7 Met. 169; *Hubbard* v. *Rawson,* 4 Gray, 246, 247; *Pulvertoft* v. *Pulvertoft,* 18 Ves. 92; *Blagg* v. *Miles,* 1 Story R. 445; Atherly on Marriage Settlements, 248, 249; 2 Kent Com. (6th ed.) 172, 174, 175; 4 Kent Com. 334, 335; 1 Jarman on Wills, 628, Amer. note.

*J. A. Andrew & G. M. Browne,* for the devisees and legatees.

HOAR, J. The construction of the deed of trust made by Elizabeth Fleet Eliot to her father was settled by this court in the case of *Hildreth* v. *Eliot,* 8 Pick. 293, so far as it was necessary to determine the questions which that case presented. It was there held, and we have no doubt correctly, that the trustee took the entire legal estate, and that the equitable estate of Mrs. Hildreth was only for life, so that her children, if she should leave any at her decease, would take a remainder as purchasers. The grant was to the trustee and his heirs forever. It was in trust to sell the whole or any part and apply the proceeds to her support as he should judge necessary; and the estate of the trustee must be coextensive with the trust.

The only question which remains to be considered is whether any equitable estate was created in Mrs. Hildreth by force of the provision that, in case of her death leaving no children, the

trustee should convey the estate to her heirs at law; and this must depend upon the consideration whether the words "heirs at law" in this conveyance are to be construed as words of limitation or of purchase.

In *Shelley's case*, 1 Co. 103, the rule was stated, "when the ancestor by any gift or conveyance takes an estate of freehold, and in the same gift or conveyance an estate is limited either mediately or immediately to his heirs in fee or in tail, that always in such cases 'the heirs' are words of limitation of the estate, and not words of purchase." This rule was abolished by the *St.* of 1791, *c.* 60, § 3, as to wills; but it remained in force as to deeds until the Rev. Sts. *c.* 59, § 9, terminated its application to deeds as well as wills. As this deed was executed in 1817, the rule in *Shelley's case* was therefore in force, and is to be regarded in its construction.

The equitable estate of Mrs. Hildreth was, from the time of her marriage, an estate for life, with a contingent remainder in fee to her children, in case she should leave any at her decease; and a farther limitation, which, if made to any person by name, would have been a contingent remainder, collateral to the first remainder in fee, and therefore good in law. 4 Kent Com. (6th ed.) 200. 2 Doug. 505, note, and cases there cited. But as the second limitation is to her heirs at law, it seems to fall precisely within the rule in *Shelley's case*, to wit, that the ancestor taking an estate for life, and in the same conveyance an estate being limited mediately (that is to say, with an estate interposed between the two) to the heirs, this remainder shall attach in the ancestor, and shall not be in abeyance. 2 Rol. Ab. 417; Remainder, H. pl. 3. And by an application of the same principle, a conveyance in fee, with a limitation of an ultimate use to the heirs of the grantor, is construed as retaining a reversion in him; "for the ancestor during his life beareth in his body (in judgment of law) all his heirs." "And if the limitation had been to the use of himself for life, and after to the use of another in tail, and after to the use of his own right heirs, the reversion of the fee had been in him, because the use of the fee continued ever in him." Co. Lit. 22 *b*.

Trusts are subject to the same rules of descent, and are deemed capable of the same limitations, as legal estates. 4 Kent Com. 302. As was said by Lord Mansfield in *Burgess* v. *Wheate*, 1 W. Bl. 160, " whatever would be the rule of law, if it was a legal estate, is applied in equity to a trust estate." *Parker* v. *Converse*, 5 Gray, 339. *Newhall* v. *Wheeler*, 7 Mass. 189.

But a distinction has prevailed to some extent in regard to the construction of trust estates, especially as to those which are executory, and to those created by marriage settlements ; they are to be construed with a much greater deference to the manifest intention, to be deduced from the whole instrument of conveyance, than in construing the like limitations in legal estates. 1 Fearne Cont. Rem. (10th ed.) 90. *Neves* v. *Scott*, 9 How. 196. It is therefore proper to inquire, whether there is anything in the objects of this deed of trust, which would lead to the conclusion that it was intended to alter the usual rule of construction, and to use the word " heirs " as a word of purchase.

The recital preceding the grant to the trustee states that " whereas she, the said Elizabeth Fleet Eliot, is desirous of securing the said estate, both real and personal, in the event of her marriage, to her sole use and benefit ; and for this purpose it hath been agreed that all the estate and property aforesaid shall be granted " to a trustee, " to be held in trust for the separate and sole use and benefit of her, the said Elizabeth, and her heirs, (notwithstanding any such coverture,) upon the terms and conditions, for the uses, intents and purposes, under the limitations, and for and during the time, as hereinafter expressed." The estate for life is limited until the marriage to the sole use and behoof of the said Elizabeth and her heirs, and then " to the sole use and separate benefit of her, the said Elizabeth, without being liable to the debts, incumbrances or control of any husband she may have during the existence and continuance of said trust." The income, with such portion of the principal as the trustee shall judge necessary for her convenience and support, is to be paid to her, or to such persons as she shall in writing, without the signature or interference of any

husband, appoint. At her death, the trustee is to convey and transfer all that remains to her children, if she shall leave any, to them and their heirs and assigns forever; and in case she should die without issue, to her heirs at law.

It would seem to be apparent from these clauses in the deed, that its whole purpose was to secure the estate to the separate use of the wife during her life, free from any control of her husband; and to secure what should remain of it to her children, if she should leave any. So far from anything in the deed showing a purpose to give a different meaning to the word " heirs " from its usual legal import as a word of limitation, it is noticeable that in the covenants of the trustee none is inserted for any disposition of the estate beyond the remainder to the children. It has been suggested at the argument that this omission was accidental; but it is an accident which would not. have been likely to occur if the purpose had been to make an express provision for collateral relatives. By limiting the estate in the first instance to the wife for life, with a contingent remainder in fee to the children, if she should leave any, the children would take, if at all, as purchasers; and therefore, although the husband is entitled to curtesy in his wife's equitable estate of inheritance, the condition of an estate by the curtesy, that there should be issue of the marriage which could inherit the estate, would not exist. *Roberts* v. *Dixwell,* 1 Atk. 607. 1 Fearne Cont. Rem. 90. 1 Cruise Dig. tit. 5, *c.* 1, § 22. *Barker* v. *Barker,* 2 Sim. 249. As far therefore as the protection of the estate of the wife and of the children against the control of the husband, or any incumbrance arising from the coverture, was the object, that object was secured.

We are therefore of opinion that Mrs. Hildreth had an equitable reversion, which she could lawfully devise, and that the claimants under her will are entitled to a conveyance from the trustee.                    *Decree accordingly.*