MARY M. WILCOX & AL. *v.* DANIEL P. WHEELER & AL.

A grant to a corporation aggregate, will convey a fee simple without words of succession or limitation.

So a grant to B., in trust for the use of a corporation aggregate, of land for a road to its bridge, will convey a fee without words of inheritance, upon the ground that the nature of the trust is such as to require a fee.

Where the proprietor of a spring of water is accustomed to supply many of the houses of a village with water for a yearly rent, and persons who claim to own the land through which some of the water pipes run, threaten to cut them, and thus interrupt the supply of water, a court of equity will take jurisdiction of a bill filed by such proprietor, and restrain the threatened injury, which, in its nature. may be regarded as irreparable; especially will this power be exercised where no injury is thereby done to the defendants, and the rights of the parties turn solely upon the legal construction of a deed.

THIS is a bill in equity, by the widow and heirs of the late Leonard Wilcox, alleging that they, and those under whom they claim, have for fifty years owned a certain spring in Orford, from which they have supplied many families there with water, and among others, four families living upon the Bridge road, so called, and some of them for more than fifty years, and by means of pipes laid down in said road, and extending its whole length of about sixty rods; alleging the plaintiffs and their ancestors so conveyed said water for over fifty years without interruption, claiming all the time a right to do so, and have thus acquired a right so to do; and that for the use of the water so supplied, they have received from each person receiving the same five dollars per year.

That the defendants, being unwilling to pay the reasonable rent demanded by the plaintiffs, for the water furnished for the tavern stand recently bought by them, have obtained a deed of the soil of the said

road, and without right threaten to cut off said pipes, to the irreparable damage of the plaintiffs.    The bill prays for an injunction to restrain the cutting of said pipes, and for general relief.

The answer admits the seizure of the land and spring as set forth in the bill, and that since the death of Leonard Wilcox the water has run to one or two of the houses in the bill mentioned, through a pipe or aqueduct, for which they have paid rent.    Cannot say how long it has so run, but deny that it has so run for fifty years.    It admits that there are, and have been, four houses on said road as stated in the bill, and that all but Demick have been supplied as alleged.    Cannot state how long Demick has been so supplied.    That the occupants of these houses have paid five dollars per year as rent; that the aqueduct has always run through a point of land which has always been and now is covered by the bridge road.    They admit that the tavern house has been supplied from said spring, through said pipes, at ten dollars per year, but cannot state how long, though it has been for many years.

Cannot state whether the plaintiffs and the persons under whom they hold, have claimed against all persons the right to take this water through this aqueduct, but do not admit it, and defendants deny all knowledge of such claim or belief in it, and deny that such right was ever granted to them, or that such claim was known to the owners of the land.

That, December 13, 1802, one William Simpson owned the land so crossed by the bridge road in fee simple, and, by deed for a valuable consideration, conveyed to Abiathar G. Britton, agent of the Proprietors of Orford Bridge, a corporation duly organized, the said land for and during the said Britton's life, in trust for the use of the corporation, retaining to the said grantor the reversion in fee simple in said-land, expectant on the termination of said life estate.    And the said corporation, claiming the use of said land by virtue of said conveyance, on the same day took possession of it, and were thenceforth, until the death of said Britton in 1854, seized of the same, claiming it under said deed; and said Simpson continued to own said reversion until his death, and it then went to his heirs, who held it till the death of said Britton, and then they became the owners of the land in fee simple, and so continued till they conveyed it to the defendants; and defendants aver that they were long before and at the filing of this bill, and ever since have been, the owners of said land and entitled to the possession thereof.

That said water was not furnished as aforesaid or pipes laid until long after 1802; that no right by prescription was, or could be, acquired during the existence of said life estate, nor until the lapse of twenty years from its termination; nor could there be any presumption of grant.    That neither said Simpson nor his heirs or assigns ever had knowledge that said aqueduct run through said land until within three years.

That, within five years, complainants have changed the location of said aqueduct in several places, and defendants claim a right to cut said pipes at the places where the location is so changed, but have not threatened or intended to cut it elsewhere, but they claim that plaintiffs have no right to take the water through this aqueduct, especially to Hale's house.

By the agreement of the parties, a copy of the deed of William Simpson to Mr. Britton, is made part of the answer.

*Hibbard,* for plaintiff.

*Felton,* for defendant.

BELLOWS, J. This cause is heard upon bill and answer. The defendants claim under William Simpson, alleging that by his deed to Mr. Britton only an estate for life was granted. The substance of that deed is, that, in consideration of one hundred dollars paid by said Britton, agent for the Proprietors of Orford Bridge, Simpson conveys to him for the use of that corporation, and to his assigns, two parcels of land, one being described as a road four rods wide from the bridge to the main road, and the other apparently for a toll house; to have and to hold the same to said Britton in trust, as aforesaid, and to his assigns.

By this deed, by force of the statute of uses, the title vested at once in the corporation, as it had full capacity to take; and nothing indicates any purpose that the legal estate should be kept on foot in Mr. Britton. The conveyance was made to him, probably, because conveyances directly to corporations had not then become quite familiar. Had it been conveyed to the corporation directly, then, as a corporation aggregate never dies, it would be a fee simple without words of succession or inheritance. Had it been a sole corporation, words of succession would have been necessary.

This general doctrine is well settled; 4 Greenl. Crim. Dig. 279; 4 Kent's Com. 7; where it is said that the reason, why, in deeds to corporations aggregate, the word heirs or successors is not necessary, is, "because in judgment of law a corporation never dies, and is immortal by perpetual succession." So is Co. Lit. 9, 6.

Such being the law where the grant is directly to a corporation aggregate, it would seem not to be unreasonable to apply the same doctrine to a grant to a trustee for the use of such a corporation, when it is of such a character that the whole title at once vests in the corporation, making it substantially a grant to the corporation.

Upon this point the law is well established, that if there be a conveyance to a trustee, and the nature of the trusts is such as to require a fee, then by necessary implication the trustee will take an estate of inheritance, although there be no words of limitation.

In the case of devises this has long been the law, and even where the purposes of the trust might *probably* be accomplished without a fee; or, in other words, if by *possibility* the purposes of the will might not be answered without the trustee had a fee, the will would be so construed. *Shaw* v. *Weigh,* 2 Str. 798; *Willis* v. *Lucas,* 1 P. Wms. 472; *Collin's Case,* 6 Co. 16; and *Ackland* v. *Ackland,* 2 Vern. 687; *Gibson* v. *Montfort,* 1 Ves. Sen. 485; *Oates* v. *Cooke,* 3 Burr. 1684. So the interest to give a fee would be inferred from the fact, that, by possibility, a fee might be necessary to effectuate the trusts, and the leaning of the courts was very strong so to construe a devise.

The same rules are applied to grants, and it was so distinctly laid down in *Cleveland* v. *Hallet*, 6 Cush. 403, by *Shaw*, *C. J.*, as an exception to the rule requiring the use of the word *heirs* as well established as the rule itself, viz : that when a conveyance is in trust, and the trusts are of such nature that they do, or by possibility may, require a legal estate in the trustee beyond that of his own life, then without words of limitation in the conveyance to the trustee, he shall take a fee.

In *Newhall* v. *Wheeler*, 7 Mass. 189–198, it was held, *Parsons*, *C. J.*, that though no words of limitation are used, the estate of the trustee shall be commensurate with that of the *cestui que trust*.

So is *Stearns* v. *Palmer & al.*, 10 Met. 32, where the grant was in trust for the use of "the inhabitants of the first parish in Springfield, and their heirs, forever, for a burying yard."

So is *Gould & al.* v. *Lamb & al.*, 11 Met. 84, where the conveyance is to A. B., to have, &c., as he is trustee under an indenture tripartite, which showed the intention to be to give more than a life estate ; and so it was held that a fee passed without words of limitation.

So in *Brooks & al.* v. *Jones*, 11 Met. 191, which was a mortgage to W., treasurer of a corporation, to have and to hold, &c., to him, the said treasurer, and his successors in office, to his and their use and behoof forever, the condition was to pay a sum of money to the treasurer and his successors in office, and it was held that W. took a fee in trust for the corporation, although the word heirs was not used ; but the intention was plain, and no stress was put upon the term *forever*.

The same doctrine is laid down by *Chancellor Kent*, in *Fisher* v. *Fields*, 10 Johns. 494, 505.   So is *Villiers* v. *Villiers*, 2 Atk. 72.

In *Welch* v. *Allen & al.*, 21 Wend. 147, it is held that where lands are granted to a trustee without words of perpetuity, he will, by implication of law, take a fee, if such estate be necessary to fulfil the objects of the trust.

So the doctrine of *Cleveland* v. *Hallett*, before cited, is confirmed in *Attorney General* v. *Prop. Federal St. Meeting House*, 3 Gray 1.

The conveyance to Glen, Hall, Shaw & al., for themselves, as a committee chosen and appointed by the congregation of the Presbyterian Meeting House in Long Lane, &c., to have and to hold the land in their said capacity, and to their successors forever, but to and for the only proper use, and benefit, and behoof of the said congregation, forever, and for no other use ; and it was held that the trustees took a fee upon the principle before mentioned, and no stress is put on the word *forever*, and the corporation was not incorporated.

So in *King* v. *Parker & al.*, 9 Cush. 78, where the grant was to B., "in trust to and for the use of the Free Masons Lodge in Boston, known by the name, &c., to their only proper use, benefit and behoof forever," it was held that this proved the fee.

The question, then, is, whether this conveyance to Mr. Britton, agent of the bridge corporation, to be held in trust for the corporation, passed the fee without words of limitation ; that is, whether the intention to give the corporation the fee can be gathered from the grant.   Had it been directly to the corporation, being a corporation aggregate, the fee would

have passed; and in all such cases where the conveyance is through a trustee to hold for the use of such corporation, the intention to make it perpetual is to be inferred, and so are the Massachusetts cases already cited, we think.

Here the grant was of two pieces of land, for a road and toll house, both essential to the use of the bridge, as much so as the land upon which stands the Federal street church; and it is impossible to suppose that it was intended to grant an estate for the life of Mr. Britton only, which might have ended in one year. Such being the case it must be considered that the fee passed, and at once vested in the corporation.

In respect to some of the Massachusetts authorities, which hold that where the purposes of the trust cannot be answered without a greater estate than for life, then by implication a fee will pass, it is urged by defendants' counsel, that the intention to give a greater estate is manifested by the use of the term *forever*, which in this case is wanting.

It is obvious, however, that this term is not one of limitation, and only bears upon the question of intention, and if that is ascertained by the nature of the grant, or the language used, whatever it may be, the law will give effect to that intention, and in this case we think the intention to grant a fee is very clearly to be inferred from the nature of the grant itself.

At the argument upon the bill and answer, the defendants contend that the bill should be dismissed for want of equity, upon the ground that the plaintiffs have not established their title at law, and no case of irreparable injury is disclosed.

The bill alleges that, for many years, something like fifty, four or five families upon the bridge road have been, and still are, supplied with water by the plaintiffs, and those under whom they claim, by means of the pipe laid in this road, for which the plaintiffs and their predecessors have received a yearly rent, and this is substantially admitted by the answer, at least as to some of these families. The bill also alleges that, during all this period of fifty years, the plaintiffs and their predecessors have so used this pipe in said road under a claim of right, and in that way have acquired a valid title to the easement by prescription.

The bill then alleges that the defendants threaten to cut off this pipe and so interrupt the supply of water to these families, to the great and irreparable injury and damage of the plaintiffs, and the occupants of the houses upon the said bridge road.

The bill also alleges that the defendants pretend to have acquired a right to do the acts so threatened by virtue of a quitclaim deed from one Simpson, of the land over which said road runs, but the bill alleges that said Simpson had no right or title to said land.

The answer says that, whether the plaintiffs and their ancestors claimed a right to lay and continue their said pipe in this road, against all persons, they do not know, but they allege they have no such knowledge or belief; and they set up a title to the land by the deed of the heirs of Mr. Simpson, who were entitled to it on the death of Mr. Britton, upon the ground that only an estate for the life of Mr. Britton was conveyed. A copy of Simpson's deed is by agreement made part of the

answer, and they allege that no right by prescription was, or could be, acquired against the heirs of said Simpson, or these defendants, during the continuance of the life estate.

And this is the defence set up, namely, a title to the road derived from the heirs of Mr. Simpson, claiming that his deed only gave to Mr. Britton a life estate, but not directly denying the jurisdiction of the court, or the allegation in the bill that irreparable damage would be caused to the families on the bridge road, and to the plaintiffs by cutting off the pipes.

It may be assumed, then, that, by cutting off the pipe, these families would be deprived of water for their houses, and that the plaintiffs would be injured as alleged in the bill, and it is apparent that the injury would be serious, and in respect to these families, at least, would, in its nature, be irreparable. On the other hand, the restraining of the defendants from cutting this pipe can cause them no injury whatever, and this may properly be considered in many cases in determining whether equity will exercise its summary power.

It is true that the persons occupying these houses are not, formally, parties to this suit; but we think the plaintiffs may fairly be regarded as representing them in this proceeding. They have undertaken to supply them with water; the legal title to the aqueduct is in the plaintiffs; and although they may not be legally bound to continue the supply of water for any fixed period, still they are interested to do so, and have provided all the money to accomplish it. If, then, the defendants cut off this aqueduct, they not only deprive these families of water for the time being, but may compel them to seek a supply from other sources, and thus cause a permanent injury to the plaintiffs by diminishing the value of their spring. Looking at it upon a larger scale, where a whole village or city is supplied with water in a similar manner, we should not hesitate to hold the injury caused by destroying the aqueduct used for such supply, as causing an injury which might well be deemed irreparable; nor should we hesitate to decide that the proprietor of the aqueduct might well be regarded as entitled to represent the persons so supplied by him, so far as to maintain a bill in equity to prevent such injury.

Especially would it be so where, as in this case, there had been by such proprietor an uninterrupted use of the aqueduct for many years, and the claim of the other party was to be determined by the legal construction of a deed.

We are of the opinion, therefore, that this objection cannot prevail, and that the plaintiffs are entitled to a decree.

*Perpetual injunction decreed.*