Melick v. Pidcock.

*Decree unanimously reversed.*

---

TUNIS D. MELICK and SARAH M. MELICK, appellants,

*v.*

FISHER PIDCOCK, respondent.

1. In a will a fee simple will pass without the word "heirs," for in a will a fee simple doth pass by the intent of the devisor; but in the creation of an estate by deed, the word "heirs" is necessary to pass the fee.

2. Conveyances to uses are construed in the same manner as deeds, deriving their effect from the common law. The word "heirs" is necessary to create a fee.

3. But where the conveyance is in trust, the trustee will take a legal estate in fee if the trust limited upon it be to the *cestui que trust* and his heirs. The words of limitation and inheritance in such case, although they are connected with the estate of the *cestui que trust*, will be held to relate to the legal estate of the trustee in order to give effect to the intention of the parties.

Melick *v.* Pidcock.

4. M., the owner of lands, made a mortgage upon them. He then conveyed the premises, by deed, to S., party of the second part, in trust for C. and C., children of the grantor, for their use and benefit and their heirs as tenants in common, " to have and to hold unto the party of the second part, in trust as aforesaid, for the said C. and C., their heirs and assigns forever."—*Held* (1) that C. and C. took an equitable estate in fee simple and S. a legal estate in fee, and that, by the statute, the trust was executed and the legal estate vested in the *cestuis que use.*   (2) That a purchaser at a sale in the foreclosure suit to which the C. and C. were parties, acquired the estate of the mortgagor, and also the fee in the equity of redemption.

On appeal from a decree in chancery, advised by *William S. Gummere, Esq.,* Advisory Master, who filed the following conclusions:

The bill in this cause is filed for a strict foreclosure of mortgaged premises, under the following circumstances: On the twentieth day of April, 1878, the defendant, Tunis D. Melick (his wife not joining with him), executed a mortgage to his father, Peter W. Melick, for the expressed consideration of $1,200. On the fifteenth day of May, 1878, the defendant conveyed all his interest in the premises conveyed by the mortgage, for a nominal consideration, to one Sarah Ann Studdiford, in trust for his children.   The trust deed, however, contained no words of inheritance.   On the fourth day of June, in the same year, a judgment was recovered against the said Tunis D. Melick in the Supreme Court of this State, by one Kline Melick, for the sum of $348.56.   Kline Melick subsequently assigned this judgment to Clark & Schomp, who, in turn, and on the fifth day of April, 1880, assigned the same to Peter W. Melick, and he, on the twenty-third day of December, 1884, assigned it to the defendant, Sarah M. Melick, the wife of Tunis D. Melick.   On the twenty-fourth day of July, 1884, Peter W. Melick assigned the mortgage and the bond secured thereby to the complainant, Fisher Pidcock.   No money consideration was paid by the complainant. He received it for the purpose of collecting the amount due upon it and applying the proceeds in payment of certain promissory notes upon which he was endorser (the notes presumably being those of his assignor, Peter W. Melick).   On August 19th, 1884,

Melick v. Pidcock.

the complainant filed a bill in this court for the foreclosure and sale of the premises embraced in his said mortgage, and such proceedings were had in that suit that, on the eighth day of October, 1885, a final decree was entered in the usual form against all of the defendants therein, one of whom was Peter W. Melick, who was made a party by reason of his ownership of the Kline Melick judgment, which he had not, at the time of the commencement of the suit, assigned to Sarah M. Melick. The other defendants were the children of Tunis D. Melick, who were the *cestuis que trustent* named in the trust deed above mentioned. Tunis D. Melick was not made a party to that suit, although Sarah Ann Studdiford, the grantee in the trust deed, had died before the bill was filed, and the mortgaged premises had consequently reverted to him.

Execution was issued on the final decree in that cause, and a sale of the mortgaged premises was had thereunder, the complainant becoming the purchaser for $700.

Subsequent to the sale under the execution in that suit, and on the sixth day of April, 1886, a judgment was recovered against the defendant, Tunis D. Melick, in the Hunterdon circuit court, by one James J. Bergen, for the sum of $1,261.93, and was assigned on the same day to the defendant, Sarah M. Melick, the foundation of the judgment being a debt of Tunis D. Melick, incurred by him prior to the execution of the complainant's mortgage.

The present bill is filed to foreclose the interest of the defendant, Tunis D. Melick, in the mortgaged premises, and also such interest as his wife, Sarah M. Melick, has therein by reason of her ownership in the last-mentioned judgment. Both Tunis D. Melick and his wife have answered the bill, setting up as a defence that the complainant's mortgage was made without consideration and with intent to defraud creditors, and they insist that it is, consequently, void. Admitting the fact to be as they allege, so far as the defendant, Tunis Melick, is concerned, it is no defence to this suit. By virtue of the statute of frauds, a mortgage, made with intent to delay, hinder or defeat creditors, is only void as to creditors whose actions are thereby hindered, dis-

turbed or defeated; as to all others, and especially as to the parties to the transaction, it is unimpeachable. His wife, however, stands upon a different plane. She occupies the position of a judgment creditor, and her judgment is based upon a debt of her husband's, which was incurred by him prior to the execution of the complainant's mortgage. She is, consequently, entitled to question the validity of the mortgage, and that is so, notwithstanding the fact that the complainant holds it by assignment, for he is, in reality, a mere trustee for Peter W. Melick in the matter, and therefore any defence that could be made against Peter W. Melick can be made against the complainant. And even if this were not so, the result would be the same, the rule being well settled that the assignee of a mortgage, even where he has paid full value for it, holds it subject to the same defences as existed against it in the hands of the mortgagee. *Woodruff* v. *Depue, 1 McCart. 168.*

, Sarah M. Melick sets up in her answer not only that she is the owner of the judgment last above mentioned, and by reason whereof she is made a party defendant to this suit, but further, by way of cross-bill, that she is the owner of the Kline Melick judgment, and asks a decree establishing the priority of both of these judgments over the complainant's mortgage. So far, however, as the Kline Melick judgment is concerned, she is not now in a position to raise the question of its priority over the complainant's mortgage. When the complainant filed his bill in this court in the original suit, that judgment was held by Peter W. Melick, and he was, for that reason, made a party defendant in the suit. It was afterwards assigned by him to Sarah M. Melick *pendente lite,* and the final decree in that cause bound her, so far as that judgment was concerned, as effectually as if she had been a party thereto. That decree fixed the relative positions of the complainant's mortgage and of the Kline Melick judgment, giving the first priority, and extinguished the lien of the judgment upon the mortgaged premises, upon a sale thereof being made under the execution, and so long as that decree stands it must be held to be conclusive as to all questions determined thereby, so far as parties and privies are concerned.

Melick *v.* Pidcock.

The priority of her other judgment (the Bergen judgment) over the complainant's mortgage, however, was not adjudicated upon in the original suit, and if the object of making the complainant's mortgage was to hinder, delay and defraud creditors, then, as against that judgment, it is void, and the judgment is a first lien upon the mortgaged premises.

This brings me to the consideration of the question of the *bona fides* of the mortgage, and the evidence on this subject is so contradictory in character, and so closely balanced, as to make it almost impossible to reach a perfectly satisfactory conclusion. The principal witnesses in the case are the mortgagor and mortgagee (who are son and father), and the testimony of the one is in direct conflict with that of the other in every particular. The story told by the son on the witness stand is that he had been sued by Kline Melick for $3,000, and that, by the advice of his father, and for the purpose of putting his property in such a shape that even if a judgment were recovered against him by Kline Melick nothing could be realized thereon, he executed the mortgage in question and delivered it to his father, the latter paying no consideration whatever for it. He further says that the understanding was that his father should settle the Kline Melick judgment as cheap as he could, and that when he (the son) should have repaid to his father the amount paid by him for the judgment, then the father was to surrender the mortgage to him; and that, after the mortgage was made, he told his father that he wanted some paper to show the arrangement under which the mortgage was held, in order that he might be protected in the event of his father's death; and that he and his father subsequently went to the office of J. Newton Voorhees, an attorney-at-law, of Flemington, and that there a written statement of the arrangement between them was drawn up and executed by them.

The father, on his part, absolutely denies the story told by the son, or that he ever signed any paper of. the purport above recited. He testifies that, prior to the making of the mortgage, he had paid out moneys, at different times, for his son's benefit, amounting altogether to from $1,200 to $1,500, keeping mem-

34

oranda thereof on loose slips of paper; that, at the time of making the mortgage, being in financial straits, he told his son that he wanted the indebtedness represented by these payments to be put in the shape of a mortgage, in order that he might use the same as a collateral; that his son agreed to this proposition, and that they went over the amount of the indebtedness together and agreed to fix it at $1,200, although it was in reality a larger amount, and that the mortgage in question was afterwards made for that amount, for the sole purpose of securing the payment of the son's indebtedness.

The memoranda spoken of by the father are not produced. He accounts for this fact by saying they were destroyed at the time when the mortgage was executed. The father, however, swears to the various amounts of money which he claims to have paid for his son's benefit, and the various accounts upon which they were paid. The story told by the father is, in turn, denied in every particular by the son.

There is evidence in support of each of these conflicting stories. In support of the story of the son, Ernest Melick testifies that, in a conversation which the witness had with the father some years ago, concerning the Kline Melick judgment, the latter said " he had taken his son's property into his possession to keep the Clarks from getting it." The witness does not attempt to give the exact words of the conversation, but merely the substance of it. The declaration testified to seems to me so ambiguous as to be entitled to little weight. It is not pretended that the object of the making of the mortgage was to interfere with Clark, who, it will be remembered, acquired no interest in the Kline Melick judgment until several years after the mortgage had been made, but that it was made for the purpose of defrauding Kline Melick; and when it is taken into consideration that, as is stated by the son himself on the witness stand, some time after the mortgage was made and shortly after the Kline Melick judgment was assigned to Clark & Schomp, they had a levy made on the son's property and were about to sell, and that, in that situation of affairs, the father went to Clark & Schomp and purchased the judgment of them, it seems to me reasonable to suppose that

the idea intended by the father to be conveyed, in his conversation with the witness (if such a conversation took place), was that he had bought the Kline Melick judgment to save his son's property—to keep Clark from getting it.

Another witness in support of the son's story—Jacob Hockenbury—testifies that, in 1879, and while he was in the employ of Peter W. Melick, he overheard a conversation between him and one Robinson, in which Peter W. Melick said that he took the mortgage (presumably the one in dispute) to keep Kline Melick from making his claim. This, if true, is important testimony. The witness, however, admits that, at the time when he overheard this conversation, he did not know Kline Melick, although he thinks the name was familiar to him, and that he did not then know that there had been any trouble between Kline Melick and the defendant, Tunis D. Melick. It seems rather singular that this witness should be able to remember this important admission, made in a conversation held eight years ago, between third parties, about a matter the existence of which was unknown to him until that moment, and in which he had no interest whatever, especially when one of the parties to whom the conversation related was a stranger to him; and I am compelled to believe, both from the improbability of his being able to recollect it, and from other coincidences in the case to which I shall hereafter refer, and also from the denial of Peter W. Melick that he ever made such a statement, either, that no such conversation ever took place, or, if it did, that the witness misunderstood its import.

The most important evidence, however, offered in corroboration of the story told by the son, is a copy of the written statement referred to by the son as having been executed by him and his father in the office of Mr. J. Newton Voorhees, for the purpose of having on paper the arrangement under which the mortgage was made. The original statement is not produced, and the father denies that it was ever made. Mr. Voorhees, however, swears it was made, and was executed in his presence by both the father and the son. He is apparently without bias in the matter, and his testimony must be accepted as true. He

also proves the loss of the original paper. The copy reads as follows:

"It is agreed that the mortgage this day executed by Tunis D. Melick to Peter W. Melick for twelve hundred dollars shall be returned to him at any time he shall demand the same, on his being repaid the judgment which Kline Melick has, and which judgment Peter W. Melick is to settle, if possible. If Peter W. Melick does not pay such judgment, then the mortgage is to be considered null and void.

"(Signed) PETER W. MELICK,
"(Signed) TUNIS D. MELICK."

It is not contended by the defendants that the rights of the parties were in any way changed by this agreement, for, although it recites that it was made on the same day upon which the mortgage was executed, and is apparently a part of the same transaction, it was, in fact, made some months afterward; and, that being so, it is without consideration, so far as the father is concerned, and *nudum pactum.* The defendants, however, insist that the paper, even if void as an agreement, conclusively demonstrates the truth of the son's story that the mortgage was made without consideration and in fraud of creditors, and ordinarily it would have this effect. I say *ordinarily,* because, in this case, its force is materially weakened by the following circumstances. Although it was made not long after the·execution of the complainant's mortgage, yet, when the prior suit was tried, notwithstanding the same defence was made as is now set up, not a word was said which would suggest its existence; and this omission is explained by Tunis D. Melick, not by saying that its existence was forgotten by him, which would have been sufficiently strange, seeing that the very object of making the paper was, as he claims, to protect him against any claim which might be made against him under this mortgage, but, what is still more remarkable, he explains it by saying that when the former suit was brought he went to Mr. Voorhees's office, in whose custody the paper had remained since its execution, for the purpose of obtaining possession of it, and that Mr. Voorhees was unable to find it, but told him that he thought he (the son) could get along without it. He further says that his coun-

Melick v. Pidcock.

sel in the prior suit, at the time of its trial, was aware that this paper had been made. It seems to me, under these circumstances, impossible to believe that this paper was intended to be evidence of the fact that the mortgage was made without consideration and merely as a cover, for, had that been its object, no counsel would have advised the defendant that the paper was not necessary to him in making a defence to the foreclosure of this mortgage, nor would any counsel have rested the defendant's case without putting in evidence so vital a piece of testimony. I must admit that it is difficult to conceive, under the evidence in the case, any other purpose in the making of this paper than that which seems to be apparent on its face; but, nevertheless, in view of the circumstances already alluded to, and in view also of other circumstances to which I shall hereafter refer, I am compelled to believe that it was not intended to be, and that it is not, in fact, an admission on the part of Peter W. Melick that the mortgage in question was made without consideration and for the purpose of defrauding creditors.

The other circumstances to which I have referred as leading me to this conclusion, and also as showing that the conversation testified to by the witness Hockenbury either never took place, or else was misunderstood by him, are these : Prior to the institution of the former suit, there had been a considerable amount of litigation between the father and son, and, shortly after the answer in that suit had been filed, they met at the office of the son's counsel for the purpose of settling all matters in dispute between them. This meeting took place on the 23d day of December, 1884, the same day upon which the Kline Melick judgment was assigned by Peter W. Melick to his son's wife, Sarah M. Melick, and, as that assignment was witnessed by the counsel in whose office the meeting was held, it is fair to presume that the assignment was a part of the settlement between the parties. Mutual releases were, at that time, executed and delivered by the father and son; that executed by the son releasing the father from all claims of every description which the son had against him. The release executed by the father was similar in its terms to that executed by the son, with this pregnant exception : that

the mortgage in suit is expressly excluded from its operation. The reservation is in the following words :

" I also agree to indemnify the said Tunis D. Melick against any loss or from being called upon to pay anything on account of the bond or mortgage· which I have assigned to Fisher Pidcock, as *I am to look to the land for the payment of the said bond and mortgage.*"

When it is remembered that, notwithstanding the assignment to Fisher Pidcock, the father still retained the beneficial interest in the mortgage, the force of this clause cannot be overestimated. It is a declaration on the part of the father that he holds the mortgage as a valid lien upon the premises embraced in it ; and the acceptance of the release by the son, with this provision in it, is an admission on his part of the validity of the father's claim.    It is impossible for me to believe that, when these parties met for the purpose of settling all matters in difference between them, and when the father, in that settlement, had received the moneys he· had paid out in the purchase of the Kline Melick judgment, the son would have permitted the mortgage to have been excepted out of the settlement if it had not been given for a valid consideration, or if the agreement executed in Mr. Voorhees's office· had been intended to limit, under all circumstances, the amount to be recovered upon the mortgage to the sum which the father might expend in the purchase of that judgment.    The very state of affairs which the son claims was intended to be provided for, by that agreement, had arrived.    The father had been repaid the moneys he expended in the purchase of the Kline Melick judgment; and, if the mortgage had been made without consideration and was held by him merely as security for the moneys expended by him in that purchase, his refusal to include the mortgage in the settlement, and his insistment that the land covered by it should still remain liable for its payment, would have been so outrageously unfair as to have at once broken off all negotiations between him and his son looking to an amicable· arrangement of the matters in difference between them.    That a· settlement was reached by these parties in which the father was permitted to retain the lien of a mortgage made to him. by the·

son, for which he had never paid a dollar, and after the moneys for which he held it as security had been repaid to him, is a supposition so at variance with the rules of human conduct that it cannot be entertained. I am led to the conclusion, after a careful consideration of all the evidence in the case, that the mortgage sought to be foreclosed was made for a valid consideration, and not for the purpose of defrauding creditors.

This conclusion I have reached after considerable hesitation, for the evidence is so conflicting as to make it a task almost of impossibility to determine with certainty the truth of the matter. Nevertheless, I am clear that the complainant is entitled to a decree. The burden is now on the defendants to prove the invalidity of the mortgage, and this they were bound to establish by the clear weight of the evidence. They have failed to do so, and consequently their defence cannot prevail.

One other question remains to be considered, and that is the amount due upon the complainant's mortgage. It will be remembered that a sale was had under the decree in the former suit, and that the complainant was the purchaser thereat for the sum of $700. He now contends that, as he got nothing of value by his purchase, the sale was a mere nullity and void.

In my opinion this contention is without force. While it may be that, if the complainant had applied to this court to be relieved from his purchase, on the ground that nothing of value had passed by the sale for want of proper parties to the suit, the sale would have been set aside and the court would have opened the final decree and allowed the proceedings to be amended for the purpose of bringing in the proper parties, yet he has not seen fit to take that course. As the matter now stands there has been a foreclosure and sale of the rights of some of the parties having real or apparent interests in the mortgaged premises, and $700 has been realized therefrom. If the purchaser had been a stranger to the proceedings, there can be no doubt that, unless the sale had subsequently been set aside, the purchase-money, less the costs of suit and execution fees, would have gone in reduction of the mortgage. The fact that the purchaser was the holder of the mortgage, instead of a stranger, cannot have the

Melick v. Pidcock.

effect of altering the rights of the parties.   Instead of applying to this court to have the sale set aside, and leave granted to him to amend the proceedings in the former suit so as to bring all the proper parties before the court, the complainant has seen fit to institute an independent suit, for the purpose only of foreclosing the interests of those parties who were not embraced in the prior suit, standing on the validity of the decree in that suit so far as it determines the rights of the parties thereto.   It is clear that, at best, the sale was only voidable and not a mere nullity, and the complainant has ratified it by the course which he has pursued.

The defendants are entitled to have credited upon the mortgage the amount of the purchase-money realized at the sale under the decree in the former suit, after deducting the costs of that suit, including the sheriff's execution fees, amounting together to $120.21, making the sum to be credited $578.79, and that sum should be first applied in reduction of the interest which has accrued upon the mortgage, rather than upon the principal.

The bringing of this suit having been caused by the failure of the complainant's solicitor to bring before the court, in the original suit, all parties having an interest in the mortgaged premises, the rule as to costs adopted by the Chancellor, in *Parker* v. *Child, 10 C. E. Gr. 41,* should be followed, and neither party will be required to pay costs to the other.

It is hardly necessary to add that the decree to be entered will not affect the inchoate right of dower, which the defendant, Sarah M. Melick, has in the mortgaged premises.

I will advise a decree in conformity to these views.

*Mr. James J. Bergen,* for appellants.

*Mr. J. G. Shipman* and *Mr. A. C. Hulshizer,* for respondent.

The opinion of the court was delivered by

Depue, J.

Tunis D. Melick, on the 20th of April, 1878, made a mortgage to his father, Peter W. Melick, upon certain lands in the

county of Hunterdon, which he had acquired under the will of his grandfather. The mortgage was assigned by Peter W. Melick to Fisher Pidcock, the complainant, on the 24th of July, 1884.

Subsequent to the making of the mortgage, and prior to the assignment to Pidcock, to wit, on the 15th of May, 1878, Tunis conveyed the mortgaged premises to Sarah Ann Studdiford, in trust. The deed of conveyance was an indenture of bargain and sale between Tunis D. Melick, of the first part, and Sarah Ann Studdiford, of the second part, whereby the party of the first part, for the consideration of $1, did grant, bargain, sell, alien, release, convey and confirm all that certain interest or remainder devised to him by his grandfather in the premises unto the party of the second part, in trust, nevertheless, for the two children of Tunis D. Melick, Clarence and Caroline, for their use and benefit, and *their heirs*, as tenants in common, in equal shares and proportions, * * * it being intended by this indenture to convey the same, subject only to such charges and incumbrances as by said last will and testament are set out, it being the object of the said party of the first part to convey all his right, title and interest therein, with the appurtenances, to have and to hold the aforesaid premises with the appurtenances, unto the party of the second part, in trust, as aforesaid for the said Clarence and Caroline Melick, *their heirs and assigns*, forever.

In this condition of the title, Pidcock, on the 19th of August, 1884, filed a bill to foreclose his mortgage and for the sale of the mortgaged premises. To this bill Clarence and Caroline Melick, the *cestuis que trust*, were made parties and filed answers. Sarah A. Studdiford died before the bill was filed. Tunis D. Melick was not made a party, he having conveyed by the trust deed his interest in the mortgaged premises. A final decree for the sale of the mortgaged premises was made October 2d, 1885. On this decree execution issued to the sheriff of Hunterdon, who made sale of the premises on the 25th of January, 1886. At this sale the complainant became the purchaser. The sale was confirmed by the court, and a deed in pursuance thereof made and delivered to the complainant.

Tunis D. Melick was in possession of the mortgaged premises at the time of the foreclosure sale, and the complainant applied to the court for a writ of assistance against Tunis D. Melick to have possession of the premises delivered to him. A writ of assistance was refused, on the ground that there being no word of inheritance in the grant to Mrs. Studdiford, upon her death the interest of the grantor devolved upon him again, and the rights of the *cestuis que trust* terminated. *Pidcock* v. *Melick*, 6 *Atl. Rep. 679*.

The complainant thereupon filed this bill, which is a bill of strict foreclosure, as distinguished from the usual bill for foreclosure and sale. Its prayer is that Tunis D. Melick may be decreed to pay the complainant the amount due him for principal and interest on the mortgage, and that in default thereof the said Tunis D. Melick, and all persons claiming from or under him, may be barred and foreclosed of and from all equity of redemption in the mortgaged premises.

To this bill Tunis D. Melick and Sarah M. Melick, his wife, were made parties. Mrs. Melick was made a party as the assignee of a judgment recovered on the 6th of April, 1886, by James J. Bergen against Tunis D. Melick, for a debt incurred by Tunis D. Melick prior to the execution of the complainant's 'mortgage. Tunis D. Melick and Sarah M. Melick both answered the bill, setting up that the complainant's mortgage was made without consideration and with the intent to defraud creditors. Mrs. Melick further, by way of cross-bill, set up that she was also the owner of a judgment recovered by Kline Melick against Tunis D. Melick on the 4th of June, 1878, and asked a decree establishing the priority of both judgments over the complainant's mortgage for the reason above mentioned. The latter judgment was held by Peter W. Melick at the time the original foreclosure suit was begun, and he was made a party to that suit as owner of this judgment. Mrs. Melick's *status* in this suit depends, therefore, upon the judgment recovered by Bergen, and that judgment was recovered after the decree in the original suit, and after the execution sale and the sheriff's deed to the complainant.

Melick *v.* Pidcock.

The deed from Tunis to Mrs. Studdiford conveyed to her an estate upon a simple trust, without any discretionary powers or active duties to be performed by the trustee. Under such a conveyance the incidents of the trust estate are a *jus habendi*, or right of actual possession in the *cestui que trust*, and also the *jus disponendi*, or right in the *cestui qui trust* to require the trustee to convey the legal estate as the *cestui qui trust* may direct. *Lewin on Trusts 18.* The trust in its nature and quality is such as would be executed by the statute. *Rev. pp. 165, 166.* The trust, as declared in the deed, is for the use of Clarence and Caroline, and their heirs and assigns forever—words which, in a legal estate, would create a fee. In construing the limitation of trusts courts of equity adopt the rules of law applicable to legal estates. *Cushing* v. *Blake, 3 Stew. Eq. 689.* On the assumption that the trustee took only a legal estate for life, Clarence and Caroline took an equitable estate in fee simple. It is clear that the equitable estate vested in them did not terminate at the death of Mrs. Studdiford, even if she took by the deed only an estate for her life ; for it is a maxim in equity that a trust once created shall not fail for want of a trustee, and the court will follow the estate into the hands of the legal owner, whoever he may be, and compel him to give effect to the trust by the execution of proper assurances, unless the legal estate has gone to a *bona fide* purchaser for value. *2 Lewin on Trusts 833.* In *Weller* v. *Rolason, 2 C. E. Gr. 13,* the testator directed his executor to invest the residue of his estate in the purchase of a house and lot to belong to his widow during her widowhood, and on her death to be sold and the proceeds equally divided among his children. The executor made the purchase, and took a deed to himself as executor without words of inheritance. The executor and the widow having died, on a bill filed by the testator's children to have the lands applied to the purposes of the trusts declared in the testator's will, a decree was made against a purchaser from the grantor's heirs, having knowledge of the trust, that a conveyance be made in fee, and that the lands be sold, and the proceeds be applied to the trusts declared in the testator's will.

If Mrs. Studdiford took only a life estate by the deed, and the

legal title reverted to the grantor on her death, the trust estate in his children was not thereby destroyed. The lands would remain in the grantor's hands, charged with the trust.

Nor did the trust deed, upon a construction of all the limitations contained in it, grant to Mrs. Studdiford only an estate for life.

It is undoubtedly the common law rule that an estate of inheritance cannot be created by deed without the word " heirs." In a will an estate of inheritance may pass without the word " heirs," for in a will a fee simple doth pass by the intent of the devisor ; but in feoffments and grants the word " heirs " is the only word that will make an estate of inheritance. *Co. Lit. 8 b 96.* The rule of the common law, that in the creation of an estate by deed the word "heirs" is necessary to pass the fee, has not been altered in this State by statute, nor has it been modified or relaxed by judicial construction. No synonym can supply the omission of the word " heirs," nor can the legal construction of the grant be affected by the intention of the parties. *Kearney* v. *Macomb, 1 C. E. Gr. 189 ; Adams* v. *Ross, 1 Vr. 505 ; Sisson* v. *Donnelly, 7 Vr. 432, 434.* But it is also a maxim of the highest antiquity in the law that all deeds shall be construed favorably, and as near the apparent intention of the parties as is possible, consistent with the rules of law. *4 Cruise 272.* To create a fee the limitation must be to " heirs ;" but it may be made either in direct terms or by immediate reference, and it is not essential that the word "heirs" be located in any particular part of the grant. *4 Kent 6 ; 2 Prest. on Estates 2 ; Shep. Touch. 101 ; Com. Dig.,* tit. " *Estate A* " 2 ; 3 *Bac. Abr. 425,* tit. " *Estate B.*" In *Doe* v. *Martin, 4 T. R. 39, 65,* the deed of settlement was " to the use of all and every the child or children of a marriage equally share and share alike ; if more than one, as tenants in common, and not as joint tenants ; and if but one child, then to such only child, his or her heirs and assigns forever." The words " his or her heirs," " considering," as was said by Lord Kenyon, " the whole settlement and the manifest intention of the parties," were allowed to operate as words of limitation on all the preceding words of the sentence.

Conveyances to uses are construed in the same manner as deeds deriving their effect from the common law. *4 Cruise 258.* The word "heirs" is necessary to create a fee. But where the conveyance is in trust, the trustee will take the legal estate in fee, although limited to him without the word "heirs," if the trust which he is to execute be to the *cestui que trust* and his heirs. The words of limitation and inheritance in such case are connected with the estate of the *cestui que trust,* but are held to relate to the legal estate of the trustee, because without such construction the trustee would not be able to execute the trust. *1 Wash. R. P. 57 ; Newhall* v. *Wheeler, 7 Mass. 189 ; Stearns* v. *Palmer, 10 Metc. 32 ; Cleveland* v. *Hallett, 6 Cush. 403 ; Welch* v. *Allen, 21 Wend. 147 ; Neilson* v. *Lagow, 12 How. ( U. S.) 98, 100; North* v. *Philbrook, 34 Me. 532. Stearns* v. *Palmer, supra,* is very like the present case. By a deed of bargain and sale, lands were conveyed to A, B and C, in trust for the inhabitants of the parish of S., for a burying-ground forever, " to have and to hold the said lands to the said A, B and C, in trust for the use of the inhabitants of said parish, and their heirs forever, as a burying-yard." It was held that the deed conveyed to A, B and C a fee simple estate. Wilde, J., said : " The words ' their heirs ' in the deed may be construed as applied to the immediate grantees, and ought to be so construed to effectuate the clear intention of the parties."

The rule of construction adopted in the foregoing cases applies as well to a grant upon a simple trust as to grants with special powers or active duties in the trustee, and is not a whit more liberal than that adopted by the King's Bench in *Doe* v. *Martin,* in the construction of successive limitations, to effectuate the manifest intention of the parties. Conveyances upon simple trusts are regarded in law as grants for the benefit of the *cestui que trust.* In every such conveyance the intention of the grantor is to give the *quantum* of estate limited in the declaration of use. The estate of the trustee, and the use limited upon it, are parts of one entire conveyance, the trustee's estate being subsidiary to the purposes of the trust. A construction which will apply words of inheritance in the trust to the trustee's estate is absolutely

necessary to give effect to the intent of the grantor. Our statute, which extends to every person to whom the use of lands is given, granted, limited, released or conveyed by deed, grant or any other legal conveyance whatsoever, and converts the equitable estate into a legal estate, should have great weight, if not a controlling affect, upon the construction of a deed to uses within its purview. *Rev. p. 165 § 66.* A use expressed in words of inheritance demonstrates that the grantor by his deed intended to convey a fee. The statute declares that the grantees to whom the use is given, limited, granted or conveyed, shall be deemed in as full and ample possession, to all intents, constructions and purposes, as if such grantees, their heirs and assigns, were possessed thereof by solemn livery of seisin and possession. Unlike the English Statute of Uses, *27 Hen. VIII c. 10,* our statute acts upon the use granted, without referring to the trustee's estate, and converts the former into a legal estate.

There is nothing in *Adams* v. *Ross* or *Kearney* v. *Macomb* contrary to this view. In *Adams* v. *Ross* the word "heirs" was neither in the granting part of the deed nor in the *habendum.* It was found only in the covenants for title annexed to the grant. Covenants of warranty or for title are mere incidents of the grant, designed for indemnity or security for the estate granted. They can neither enlarge nor narrow the grant, and will themselves be restrained and limited to the estate conveyed. *Com. Dig. tit. "Estate A". 2 ; Clanrickard* v. *Sidney, Hob. 273 ; Seymour's Case, 10 Co. 97 ; Rawle on Covenants for Title 199, 415, 524.* The decision in *Adams* v. *Ross* in this court was expressly put upon the ground that covenants for title were no part of the conveyance. The error of the supreme court, for which its judgment was reversed, was in calling in aid covenants for title to enlarge the grant. In *Kearney* v. *Macomb* the deed was to A. K. K., his legal representatives and assigns, to hold the same and the proceeds thereof upon the trusts and conditions set forth in an antenuptial contract. Neither the deed nor the antenuptial contract contained the word "heirs." In both these cases the words indispensable to create a fee in a grant were entirely wanting, and there was no room for construction. In *Weller* v. *Rola-*

*son* reformation of the deed was necessary. The deed did not contain the word " heirs," nor did the trust appear in any way in it.

*Price* v. *Sisson, 2 Beas. 168*, affirmed *2 C. E. Gr. 475*, decided that a conveyance to grantees and their heirs for the use of the grantees and their heirs, in trust for certain persons beneficially interested, did not vest the legal estate in the beneficiaries, because of the common-law rule, that when a use is limited upon a use the statute executes only the first use. In the deed to Mrs. Studdiford, the first and only use declared is for the beneficiaries, Clarence and Caroline, and their heirs, and all the authorities, ancient and modern, agree that the statute executes the first use and converts it into a legal estate, except where the powers and duties conferred upon the donee to uses are such as require in him the legal estate for their discharge.

Under the trust deed, the children of Tunis took an equitable estate in fee simple, and Mrs. Studdiford, as trustee, a legal estate in fee, and there was no estate to revert to Tunis on the trustee's death. By the statute, the legal estate of the trustee became vested in the *cestuis que use*. The complainant, as purchaser under the foreclosure decree, to which the children of Tunis were parties, acquired the estate of the mortgagor, and also the fee in the equity of redemption. This bill was unnecessary to perfect the complainant's title under the original foreclosure suit. Indeed, in any aspect, the prayer of the bill, which is that Tunis redeem the complainant's mortgage or be foreclosed, is inappropriate. If any relief by bill was needed, the prayer should have been that Tunis convey to the complainant as owner of the equitable estate, and a decree for a conveyance would have been as of course.

A decree dismissing the complainant's bill for this reason would be inequitable. The defendants' opposition to the allowance of a writ of assistance, on the ground that the complainant's title under the foreclosure was imperfect, and the denial of the writ, for that reason, cast a cloud upon the complainant's title. The defendants did not demur or object to the bill. The complainant made Mrs. Melick a party to this suit. By her answer and a cross-bill, she set up that the mortgage held by the com-

plainant was made by her husband, without consideration, for the purpose of defrauding his creditors.   The complainant answered the cross-bill, joining issue on the allegations in it.   The bill may, and should, under the circumstances, be treated as a bill by the complainant to remove a cloud upon his title.

The Master found against the defendants on the merits, and advised a decree for the complainant.   The burden of proof is upon the defendants.   The testimony is conflicting and unsatisfactory, and in some respects unreliable.   The evidence was taken orally in the presence of the Master, with opportunity to see and observe the demeanor of the witnesses.   On a consideration of the whole case, as presented by the testimony, I find no reason to reverse the finding of the Master, and the decree advised by him should be affirmed.

MAGIE, J. (*dissenting*).

I vote to reverse the decree below, and for a decree dismissing the original bill filed by Fisher Pidcock.

Upon the facts stated in his bill, Tunis D. Melick had no title or interest in the mortgaged premises.   For the reasons given in the opinion of the majority of the court, it is clear that Tunis D. Melick had conveyed to Sarah Ann Studdiford a fee by implication in trust for Clarence and Caroline Melick.   The judgments of Sarah M. Melick were not entered until after that conveyance. There was therefore no equity to sustain the specific prayer for relief.

I do not think the bill ought to be sustained as a bill to put at rest a doubt respecting the title obtained by the previous foreclosure, which was against Clarence and Caroline Melick.   That doubt is said to have arisen by reason of the refusal of a writ of assistance, on the ground that Mrs. Studdiford acquired only a life interest by the deed of Tunis D. Melick.   Pidcock's proper course was to appeal from that order.   The expensive and oppressive course of filing a bill to quiet title ought not to be encouraged.

For like reasons, I think Mrs. Melick's answer in the nature of a cross-bill ought to be dismissed.

The relief prayed by her as against Pidcock's mortgage would be ineffectual and valueless, if the deed to Sarah Ann Studdiford passed all the title of Tunis D. Melick, for in that case her judgments were not liens upon the mortgaged premises. Before attacking the priority of that mortgage, she must set aside the conveyance to Mrs. Studdiford.

*For affirmance.*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, SCUDDER, BROWN, CLEMENT, COLE, McGREGOR, WHITAKER. 11.

*For reversal.*—MAGIE, PATERSON. 2.